UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSHUA CORDLE, <br><br> Plaintiff, <br><br> v. <br><br> BLAKE FLEMING, *et al.*, <br><br> Defendants. | CAUSE NO. 3:25-CV-335-PPS-APR |

## **OPINION AND ORDER**

Joshua Cordle, a prisoner without a lawyer, filed a complaint. [DE 1]. "Under 28 U.S.C. § 1915A, I must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a plaintiff is proceeding without counsel, his allegations must be given liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Cordle, who is currently incarcerated at the Indiana State Prison, alleges he asked Counselor Blake Fleming for a pen on February 15, 2025. Counselor Fleming responded by making "some sexual remark" to Cordle. [DE 1 at 3]. He describes Counselor Fleming as a "very open gay man" and alleges he made similar sexual comments to him

in the past. [*Id.*] Cordle became angry due to the remark, so Counselor Fleming refused to give him a pen. Cordle then threw "a very hard plastic" cup "with sharp edges to it" at Counselor Fleming, who responded by throwing the cup back at Cordle. [*Id.*] It hit him in the eye and "instantly" damaged it. [*Id.*] Cordle "[i]mmediately started having problems seeing." [*Id.* at 4]. Cordle asked Counselor Fleming to get him medical attention, but he responded by saying, "Fuck you, deal with it." [*Id.*] Counselor Fleming then walked away and informed the rest of the staff that Cordle had thrown a cup at him.

     Cordle was moved to a different cell in the segregation unit that had "feces and blood smeared all over everything in the cell." [DE 1 at 4]. He asked the officers to clean it, but they refused. He was also refused "cleaning supplies and chemicals." [*Id.*] After a few days, Cordle became ill. He couldn't hold down any food, he experienced stomach pain, vomiting, and headaches, and he had hard time breathing. Cordle alleges, "Every time these Defendants worked, I would ask them to get me medical attention for the injury to my eye and for being sick." [*Id.* at 5]. He specifically asked Sgt. Sanders, Sgt. Mitchell, Officer White, and Lt. Stone for medical attention and cleaning supplies multiple times, but they refused. His eye ended up swelling shut, and he hasn't received "any kind of medical help." [*Id.*]

     Cordle never received the cleaning supplies, but he eventually ended up using a "dirty rag and cold water" to "clean all the feces and blood up." [DE 1 at 7]. He claims he is still sick—although he doesn't provide details about this alleged ongoing illness—and he is worried he caught something from being exposed to the feces in his cell. He

2

submitted various grievances and health care request forms in February and March of 2025, but they were either ignored or denied. He has sued all of the defendants for monetary damages only—specifically, Counselor Fleming for throwing the cup at him and being deliberately indifferent to his medical needs; Sgt. Sanders, Sgt. Mitchell, Officer White, and Lt. Stone for being deliberately indifferent to his medical needs and to the condition of his cell; and Centurion for refusing to provide him with medical care despite his health care requests.

I'll begin with Cordle's claims against Counselor Fleming. The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal quotation marks and citation omitted). Deference is given to prison officials when the use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Jails are dangerous places, and security officials are tasked with the difficult job of preserving order and discipline among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). It is important that prisoners follow orders given by guards. *Id*. at 476-77 (citing *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). To compel compliance—especially in situations where officers or other inmates are faced with threats, disruption, or

3

aggression—the use of summary physical force is often warranted. *Id*. at 477 (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). That is not to say, however, that such justification exists "every time an inmate is slow to comply with an order." *Lewis*, 581 F.3d at 477. Several factors are explored when determining whether an officer's use of force was malicious or legitimate, including the need for applying the force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the prisoner's injury. *Hendrickson*, 589 F.3d at 890.

Here, Cordle alleges Counselor Fleming responded to Cordle's own actions by throwing the hard, sharp-edged cup back at his head, which injured his eye. Although further investigation may reveal the force used was legitimate under the circumstances, at this preliminary stage—and giving Cordle the benefit of the inferences to which he is entitled—he has stated a plausible Eighth Amendment excessive force claim against Counselor Fleming.

Cordle also alleges the defendants were deliberately indifferent to his medical needs. Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022)

4

(quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted).

Importantly, "'[n]o prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)). There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks*, 555 F.3d at 594. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. In most circumstances, prison officials may rely on the medical staff to provide the inmates with the medical care they need. *See e.g., Walker*, 940 F.3d at 965 (it is generally appropriate to "defer to medical

professionals' treatment decisions" unless no competent medical professional would have responded the same way).

Here, Cordle alleges Counselor Fleming refused to let him be seen by the medical staff for his eye injury on the date of the incident, even though it was immediately apparent he was experiencing serious vision issues. He further alleges Sgt. Sanders, Lt. Stone, Sgt. Mitchell, and Officer White deliberately ignored and/or refused his repeated requests to be taken to the medical department for care, even though they knew his eye was injured and he was experiencing stomach, headache, and breathing issues in the days following the incident. Cordle's admission that he sent health care request forms directly to the medical department in February and March undercuts his assertion that the named defendants are personally responsible for his lack of care. *See Aguilar*, 861 F.3d at 633 (division of labor is "critical"). That said, I will give him the benefit of the inferences to which he is entitled at this stage and assume he is claiming these defendants somehow interfered with or completely blocked his access to medical care as a whole. Therefore, I find Cordle has stated plausible Eighth Amendment claims against the aforementioned defendants for being deliberately indifferent to his medical needs.

Turning to Cordle's allegations regarding his cell, the Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing,

shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). "An official who fails to uphold these duties violates the Eighth Amendment upon exhibiting deliberate indifference to a substantial risk of serious harm to an inmate." *Thomas*, 2 F.4th at 719 (internal quotation marks and citation omitted). Deliberate indifference encompasses both objective and subjective components:

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Id.* at 719–20 (internal quotation marks, citations, and brackets omitted).

Cordle alleges feces and blood were smeared all over his cell walls, that he was repeatedly refused sanitation and/or cleaning supplies by Sgt. Sanders, Lt. Stone, Sgt. Mitchell, and Officer White, and that he remained in the cell from February 15, 2025—the date of the incident—to the day he filed his complaint.[1] He claims they were aware of the condition yet refused to help in any way. Giving Cordle the benefit of the inferences to which he is entitled at this stage, he has stated plausible Eight Amendment deliberate indifference claims against these defendants. *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (collecting cases establishing a cell smeared with feces and blood can create an excessive risk to health).

---

[1] The complaint is dated April 10, 2025, but it was not received by the court until April 18, 2025. [*See* DE 1 at 13].

Finally, Cordle has sued "Centurion – Medical Provider" for monetary damages for failing to provide him with medical care for his eye injury and illness despite the healthcare request forms he sent in February and March of 2025. [DE 1 at 2]. A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). That said, a corporation cannot be held liable under a *respondeat superior* theory. *Howell*, 987 F.3d at 653. Rather, "[i]n a case against a private contractor that provides healthcare to incarcerated people, the critical question for liability is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it)." *Id*. at 653–54 (internal quotation marks and citation omitted); *see also Johnson v. Cook Cty.*, 526 F. App'x 692, 695 (7th Cir. 2013) (The policy or custom must be the "moving force behind the deprivation of his constitutional rights."). Specifically, a corporation can be held liable for "an express policy that, when enforced, causes a constitutional deprivation." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Additionally, absent an unconstitutional policy, corporate liability may be established with a showing of "a widespread practice that, although not authorized by written law or express [corporate] policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). The key in these types of claims, however, is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices. . .. What is needed is

8

evidence that there is a true municipal or corporate policy at issue, not a random event." *Howell*, 987 F.3d at 654 (internal quotation marks, brackets, and citations omitted).

Here, Cordle does not describe any sort of policy, procedure, practice, or custom that would subject Centurion to liability. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original)). Therefore, this corporate defendant will be dismissed.

**ACCORDINGLY**:

(1) Joshua Cordle is **GRANTED** leave to proceed against Counselor Blake Fleming in his individual capacity for monetary damages for subjecting him to excessive force on February 15, 2025, in violation of the Eighth Amendment;

(2) Joshua Cordle is **GRANTED** leave to proceed against Counselor Blake Fleming in his individual capacity for monetary damages for being deliberately indifferent to his medical needs with regard to his eye injury on February 15, 2025, in violation of the Eighth Amendment;

(3) Joshua Cordle is **GRANTED** leave to proceed against Sgt. Sanders, Lt. Stone, Sgt. Mitchell, and Officer White in their individual capacities for monetary damages for being deliberately indifferent to his medical needs with regard to his eye injury and illness (with symptoms including stomach pain, headaches, and breathing issues) between February 15, 2025, and April 10, 2025, in violation of the Eighth Amendment;

9

(4) Joshua Cordle is **GRANTED** leave to proceed against Sgt. Sanders, Lt. Stone, Sgt. Mitchell, and Officer White in their individual capacities for monetary damages for being deliberately indifferent to the condition of his cell between February 15, 2025, and April 10, 2025, in violation of the Eighth Amendment;

(5) **DISMISSES** all other claims;

(6) **DISMISSES** Centurion – Medical Provider;

(7) **DIRECTS** the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Counselor Blake Fleming, Sgt. Sanders, Lt. Stone, Sgt. Mitchell, and Officer White at the Indiana Department of Correction, with a copy of this order and the complaint [DE 1];

(8) **ORDERS** the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(9) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), Counselor Blake Fleming, Sgt. Sanders, Lt. Stone, Sgt. Mitchell, and Officer White to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED**.

ENTERED: June 13, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT